IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| D.C., *a minor, by and through his mother, A.T.,* | ) | |
| *and on behalf of all others similarly situated* and | ) | |
| A.T., *his mother, on her own behalf,* | ) | 2:19-cv-00012 |
| | ) | Judge Marilyn J. Horan |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| PITTSBURGH PUBLIC SCHOOLS and | ) | |
| NICHOLAS SIBLE, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiffs, D.C., on behalf of himself and all others similarly situated, as well as D.C.'s

mother, A.T., and D.C.'s grandfather, F.T., filed this civil action in January 2019. (ECF No. 1).

The initial Complaint contained thirteen counts related to incidents in which school employees

physically restrained or otherwise discriminated against D.C., an elementary school student.

Plaintiffs brought claims against Defendant Pittsburgh Public Schools (the District), for

violations of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; the Americans with

Disabilities Act, 42 U.S.C. § 12101 *et seq.*; the Pennsylvania Human Relations Act, 43 P.S.

§ 951 *et seq.*; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*; and 42 U.S.C.

§ 1983. Plaintiffs also brought claims against individual Defendants, school police officer

Marion Parker, teacher Nicholas Sible, and principal Mark McClinchie, for constitutional

violations under 42 U.S.C. § 1983 and for intentional infliction of emotional distress under

Pennsylvania common law.

Mr. Sible answered the Complaint, but the other three Defendants filed Motions to

Dismiss. (ECF Nos. 8, 10, 21, 23, 24). In ruling on those Motions, this Court dismissed the

majority of Plaintiffs' claims.  (ECF No. 42); *D.C. v. Pittsburgh Pub. Sch.*, 415 F. Supp. 3d 636

(W.D. Pa. 2019).  Plaintiffs then filed the present Amended Complaint, in which Plaintiffs did

not reallege F.T.'s claims or the claims against Officer Parker and Mr. McClinchie.  (ECF No.

47).  Accordingly, F.T., Officer Parker, and Mr. McClinchie are no longer parties to this matter.

The District again moves to dismiss almost all of the claims against it, as detailed below,

under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (ECF Nos. 54, 56).  Mr. Sible

likewise moves to dismiss the remaining claim against him,[1] under Rule 12(b)(6).  (ECF No. 50).

The parties have briefed the issues, (ECF Nos. 51, 55, 57, 61, 65, 67), and the Motions are now

ripe for decision.

For the following reasons, the District's Motion to Dismiss under Rule 12(b)(1) and Mr.

Sible's Motion to Dismiss under Rule 12(b)(6) both will be granted.  The District's Motion to

Dismiss under Rule 12(b)(6) will be denied in part, as it relates to Count VII, and otherwise

denied as moot.  The Court will also dismiss, sua sponte, D.C.'s individual claim in Count II for

lack of subject matter jurisdiction.

## I. Background[2]

D.C. entered kindergarten in the fall of 2015.  (ECF No. 47, at ¶ 41).  Throughout the

2015-2016 school year, D.C. exhibited significant behavioral concerns.  *Id.* at ¶¶ 43–48.  The

behavioral concerns continued into his first-grade year.  *Id.* at ¶¶ 49–50.  His behaviors included

eloping from the classroom, screaming and crying in class, failing to follow directions, throwing

---

[1] The Court previously dismissed, sua sponte, the § 1983 claim against Mr. Sible for failure to state a claim.  The Court was required to consider the merits of that claim in order to analyze the District's Motion to Dismiss regarding a related § 1983 claim.  *D.C.*, 415 F. Supp. 3d at 660–62.

[2] The facts of this case are provided in greater detail in the Court's previous Opinion in this matter.  Because the Court writes primarily for the parties, the Court provides only a condensed statement of facts here.

objects, kicking, shoving, using inappropriate language, and destroying property.  *Id.* at ¶¶ 43, 45, 47, 62, 63, 77.  In October 2016, D.C. was diagnosed with attention deficit hyperactivity disorder and oppositional defiant disorder.  *Id.* at ¶ 52.

Throughout D.C.'s kindergarten and first-grade years, the District made several phone calls to D.C.'s mother, A.T. (Mother), and had several in-person meetings with her about D.C.'s behavior.  *Id.* at ¶¶ 44, 46–48, 56, 62, 65, 75.  The District suspended D.C. multiple times for his behavior and recommended, or even demanded, on several occasions that Mother seek mental health services for D.C.  *Id.* at ¶¶ 44, 45, 50, 57, 64.  Over the course of the spring of D.C.'s kindergarten year and the fall of his first-grade year, the District agreed to provide D.C. with sensory breaks, referred him to the Student Assistance Program, referred him to the school counselor, and placed him in a social skills group.  *Id.* at ¶¶ 46, 51, 54, 61.  The District also "created a crisis intervention plan for D.C.," which, according to the Amended Complaint, "specifically relied upon the utilization of school police."  *Id.* at ¶ 68.  According to Plaintiffs' administrative due process complaint (attached as an exhibit to the Amended Complaint), however, the crisis intervention plan "permitted the utilization of school police if [D.C] was unsafe after two tiers of crisis interventions."  (ECF No. 48, at 5).

During one behavioral incident in the fall of D.C.'s first-grade year, "D.C. engaged with a teacher during instruction, screamed and yelled during instruction, and threw a chair and desk." (ECF No. 47, at ¶ 54).  His teacher, Nicholas Sible, "placed his knee on D.C.'s back while pushing D.C.'s face into the floor in an attempt to restrain him."  *Id.*  In a different incident, Mr. Sible "reportedly choked D.C."  *Id.* at ¶ 72.  In yet another incident, the District called school police officers, who drove D.C. home in a police patrol car.  *Id.* at ¶ 59.  The District also called school police officers on two other occasions.  *Id.* at ¶¶ 63, 78.  During one of those occasions,

Officer Parker handcuffed D.C. and threatened to involuntarily commit him if Mother did not take him from the school. *Id.* at ¶¶ 78–83.

In January 2017, during D.C.'s first-grade year, the District initiated an evaluation to determine whether D.C. needed special education services. *Id.* at ¶¶ 44–46, 51, 57, 64, 89. As a result of the evaluation, the District "recommended a smaller classroom size and additional mental health services." *Id.* at ¶ 89. At the subsequent team meeting to develop D.C.'s Individualized Education Program (IEP), the team "determined that D.C. required a full-time emotional support setting." *Id.* at ¶ 92. D.C. was moved to an approved private school where he could receive the identified services. *Id.*

Mother subsequently filed a due process complaint with Pennsylvania's Office of Dispute Resolution, alleging violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 *et seq.*, and § 504 of the Rehabilitation Act, 29 U.S.C. § 794. *Id.* at ¶ 36; (ECF No. 48). In April 2018, Mother and the District reached a settlement prior to the initial hearing, and they executed a Settlement Agreement in October 2018. (ECF No. 47, at ¶¶ 37–40; ECF No. 48-1). In January 2019, Plaintiffs filed the present civil action before this Court. (ECF No. 1).

The Amended Complaint contains the following claims: in Count I, D.C., individually and on behalf of all other similarly situated, brings a claim under § 504 of the Rehabilitation Act against the District. (ECF No. 47, at ¶¶ 93–117). In Count II, D.C. also brings, individually and on behalf of all other similarly situated, a claim under the Americans with Disabilities Act (ADA) against the District. *Id.* In Counts III and IV, Mother brings a § 504 claim and an ADA claim, respectively, against the District for associational discrimination. *Id.* at ¶¶ 118–34. In Counts V and VI, D.C. brings nearly identical § 1983 claims against the District, alleging violations of "D.C.'s right to be free from unreasonable seizure and excessive force." *Id.* at ¶¶ 135–72. In Count VII, D.C. alleges a claim under the Pennsylvania Human Relations Act

(PHRA) against the District for race and disability discrimination. *Id.* at ¶¶ 173–83. Next, in Count IX,[3] D.C. brings a common law intentional infliction of emotional distress claim against Mr. Sible. *Id.* at ¶¶ 184–90. In Count XII, D.C. also alleges a § 1983 claim against the District under a Fourteenth Amendment state-created danger theory. *Id.* at ¶¶ 191–216. Lastly, in Count XIII, Mother brings a § 1983 claim, alleging a violation of her Fourteenth Amendment liberty interests. *Id.* at ¶¶ 217–33.

The District moves to dismiss the putative class claims in Counts I and II, as well as the individual claims in Counts III, IV, V, VI, XII, and XIII, for lack of subject matter jurisdiction. (ECF Nos. 56, 57). The District also moves to dismiss Counts III, IV, V, VI, XII, and XIII for failure to state a claim, and asks the Court to decline the exercise of supplemental jurisdiction over D.C.'s PHRA claim in Count VII. (ECF Nos. 54, 55). The District does not challenge the Court's subject matter jurisdiction over, or the merits of, D.C.'s individual claims in Counts I and II. Finally, Mr. Sible moves to dismiss Count IX, the only claim against him, for failure to state a claim. (ECF Nos. 50, 51).

## II. Subject matter jurisdiction under Rule 12(b)(1)

A. Legal standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a court to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff generally has the burden of establishing that the court has subject matter jurisdiction. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). The defendant can challenge whether the

---

[3] Plaintiffs maintained the same numbering of the Counts as in the first Complaint, and chose not to reallege Counts VIII, X, and XI.

plaintiff has done so, through either a facial challenge or a factual challenge to the complaint.  *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017).

In a facial challenge, the court looks to the face of the complaint and accepts as true the facts alleged by the plaintiff.  *Hartig Drug Co. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016).  If the court cannot conclude, based on face of the complaint, that jurisdictional requirements are met, then the court must dismiss the complaint.  *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 633 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In other words, a facial challenge "calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6)."  *Constitution Party v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  Thus, "'[t]hreadbare recitals of the elements of [jurisdiction], supported by mere conclusory statements, do not suffice.'"  *In re Horizon Healthcare Servs. Data Breach Litig.*, 846 F.3d at 633 (quoting *Iqbal*, 556 U.S. at 678).  In a factual challenge, however, the plaintiff's factual allegations are not presumed to be true, and the court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Hartig Drug Co.*, 836 F.3d at 268.  A factual challenge may only be raised after an answer has been filed.  *Long v. SEPTA*, 903 F.3d 312, 320 (3d Cir. 2018).  Thus, any motion to dismiss for lack of subject matter jurisdiction filed prior to an answer is, by default, a facial challenge.  *Id.*

Importantly, the court has "an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from" the defendant.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).  Federal courts cannot exercise jurisdiction where Congress has not given it, even if all parties assume subject matter jurisdiction exists.  *Hartig Drug Co.*, 836 F.3d at 267.  Subject matter jurisdiction cannot be waived.  Fed. R. Civ. P. 12(h)(3).

B. Discussion

The District first argues that the Court lacks subject matter jurisdiction over the class claims in Counts I and II because the class members have not exhausted their administrative remedies under the IDEA.  (ECF No. 57, at 2).  The District further argues that D.C. has not alleged a systemic deficiency that would excuse class members from the IDEA's administrative exhaustion requirement.  *Id.* at 4–5.  Second, the District argues that the Court lacks subject matter jurisdiction over the individual claims at Counts III, IV, V, VI, XII, and XIII because Plaintiffs have not exhausted their IDEA administrative remedies as to those claims.  *Id.* at 6.

As discussed in this Court's previous Opinion in this matter, the IDEA requires participating states, including Pennsylvania, to provide a "free appropriate public education" (FAPE) to children who have special needs.  20 U.S.C. § 1412(a)(1).  The IDEA's "child find" provision requires that states identify and evaluate all students with disabilities who need special education services so that these students may receive a FAPE.  20 U.S.C. § 1412(a)(3)(A).  In addition to complying with the IDEA's child find obligation, Pennsylvania's public schools must "implement specified procedural safeguards to ensure children with disabilities and their parents are provided with due process." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271–72 (3d Cir. 2014).  The procedural safeguards allow parents to file a due process complaint with Pennsylvania's Office of Dispute Resolution regarding "any matter relating to the identification, evaluation, or educational placement of the child" or the provision of a FAPE to that child.  *Id.*; 20 U.S.C. § 1415(b)(6).  A plaintiff must exhaust the administrative remedies provided by the IDEA's procedural safeguards before he may challenge the alleged denial of FAPE in federal court.  20 U.S.C. § 1415(i).  The Third Circuit has held that in the IDEA context, administrative

exhaustion is required in order for courts to have subject matter jurisdiction over the plaintiff's

IDEA claims.  *Wellman v. Butler Area Sch. Dist.*, 877 F.3d 125, 130 (3d Cir. 2017).

This Court further explained that § 1415(*l*) of the IDEA requires that if the plaintiff wants

to pursue claims under the Constitution, the ADA, title V of the Rehabilitation Act, or under

other federal laws protecting the rights of children with disabilities, and if those claims are

FAPE-based—meaning, based on a set of circumstances for which the IDEA provides relief—

then the plaintiff must exhaust those claims to the same extent as his IDEA claim.  20 U.S.C.

§ 1415(*l*); *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 750 (2017).  Stated differently, if a

plaintiff wishes to bring a FAPE-based claim under the Constitution, the ADA, title V of the

Rehabilitation Act, or another federal law protecting the rights of children with disabilities, then

those claims must be included in the due process complaint alongside the plaintiff's IDEA claim.

Next, this Court's previous Opinion discussed that although the Third Circuit deemed

administrative exhaustion to be a jurisdictional requirement in the IDEA context, the Third

Circuit nonetheless recognized exceptions to the requirement.  Plaintiffs do not need to exhaust

the administrative process when: "'(1) exhaustion would be futile or inadequate; (2) the issue

presented is purely a legal question; (3) the administrative agency cannot grant relief; [or] (4)

exhaustion would cause severe or irreparable harm.'"  *M.M. v. Paterson Bd. of Educ.*, 736 F.

App'x 317, 319–20 (3d Cir. 2018) (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 275

(3d Cir. 2014)).  In light of the futility and agency relief exceptions, the Third Circuit has also

excused plaintiffs from IDEA administrative exhaustion when they "'allege systemic legal

deficiencies and, correspondingly, request system-wide relief that cannot be provided (or even

addressed) through the administrative process.'"  *J.T. v. Dumont Pub. Schs.*, 533 Fed. App'x. 44,

54 (3d Cir. 2013) (quoting *Beth V. by Yvonne V. v. Carroll*, 87 F.3d 80, 89 (3d Cir. 1996)).  A

claim addresses systemic legal deficiencies "'if it implicates the integrity or reliability of the

IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the [IDEA].'" *Id.* (quoting *Doe v. Ariz. Dep't of Educ.*, 111 F.3d 678, 682 (9th Cir.1997)).  However, a claim does not implicate systemic deficiencies "'if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem.'"  *Id.* (quoting *Doe v. Ariz. Dep't of Educ.*, 111 F.3d at 682).

Finally, this Court noted that the Third Circuit is aware that its recognition of exceptions to administrative exhaustion in the IDEA context creates a tension as to whether IDEA administrative exhaustion is truly jurisdictional.[4]  But, the Third Circuit has not yet had an occasion on which to reconsider the issue of whether or not IDEA administrative exhaustion should be a prerequisite to subject matter jurisdiction.  Until the Third Circuit reconsiders the issue and rules otherwise, this Court is bound by the Third Circuit precedent which holds that if a plaintiff has not exhausted his administrative remedies in accordance with the IDEA, then this Court does not have subject matter jurisdiction over his FAPE-based claims.

*i. Putative class claims*

In Counts I and II, D.C. alleges that the District violated § 504 and the ADA, respectively.  (ECF No. 47, at ¶¶ 93–117).  He brings these claims on his own behalf and on behalf of a class of "all students with disabilities, as well as those students who should be

_____

[4] In *Wellman v. Butler Area School District*, the Third Circuit recognized that allowing exhaustion exceptions in the IDEA context created a tension as to whether IDEA exhaustion can truly be a jurisdictional requirement.  *Wellman*, 877 F.3d at 130.  However, the court ultimately concluded that because the parties had not raised the issue, the court would analyze exceptions to exhaustion regardless of whether administrative exhaustion is a prerequisite to subject matter jurisdiction.  *Id.*  The Third Circuit recognized the same tension in a subsequent, non-precedential opinion, but again declined to rule on the issue.  *S.D. v. Haddon Heights Bd. of Educ.*, 722 Fed. App'x. 119, 124 n.6 (3d Cir. 2018).

identified as described in [the IDEA], who have been or will be unlawfully handcuffed or restrained by school police officers or District personnel in the Pittsburgh Public Schools." *Id.* at ¶¶ 1, 24. The District argues that the Court should dismiss the class claims because the class members have failed to exhaust their administrative remedies in accordance with the IDEA. (ECF No. 57, at 2–6). The District also argues that D.C. has failed to establish that the class should be excepted from the exhaustion requirement. *Id.*

A review of Counts I and II shows that these § 504 and ADA claims remain FAPE-based, just as they were in the initial Complaint. (ECF No. 47, at ¶¶ 103–07). Therefore, unless D.C., on behalf of the class, can show that a relevant exception applies, each class member must have exhausted his administrative remedies in order for the Court to have subject matter jurisdiction over these claims. D.C. asserts that he and the class have alleged a systemic deficiency that warrants bypassing the administrative process and gives the Court subject matter jurisdiction. Specifically, the Amended Complaint alleges "that it is District policy to rely upon school police intervention rather than to initiate an evaluation of a student displaying behaviors that otherwise trigger the District's Child Find obligation." *Id.* at ¶ 106. The Amended Complaint further states that the District's alleged "policy or practice of relying on school police rather than initiating evaluations of otherwise eligible students ultimately denied students like D.C. and the Class Members access to an appropriate public education." *Id.* at ¶ 107. However, beyond D.C.'s conclusory allegations that the District has a "policy or practice" of relying on school police intervention in lieu of complying with its child find obligation, the facts, as alleged in the Amended Complaint, do not bear this out.

Plaintiffs describe at least thirteen specific incidents of outbursts and escalated behaviors from D.C. Only in three of these incidents did the District contact school police. And it appears that each time the call was made when D.C.'s behavior was putting his or others' safety at risk.

The District otherwise called Mother; met with Mother; made recommendations and requests (and sometimes demands) that Mother seek mental health treatment for D.C.; referred D.C. to the school counselor and the Student Assistance Program; and placed D.C. in a social skills group. The District also established a crisis intervention plan that, according to the due process complaint, had two tiers of interventions prior to calling the school police. The Court recognizes that according to the facts alleged, the District did not initiate a formal special education evaluation until the middle of D.C.'s first-grade year. But the facts detailing all of the District's interventions do not show that the District had a "policy or practice" of relying on school police as a way putting off or avoiding the special education evaluation. Moreover, the Court refers Plaintiffs back to the previous Opinion and Order, wherein this Court explained that what D.C. sought—and what he again seeks here in the Amended Complaint—on behalf of the putative class "is that the District properly and timely identify students with disabilities so that they can be excepted from the District's general disciplinary policy." *D.C.*, 415 F. Supp. 3d at 651. Such exceptions must be determined on an individualized basis. *Id.* at 651–52. Consequently, D.C. has not alleged a systemic deficiency that would merit the class members' exemption from the IDEA's administrative exhaustion requirement. The putative class claims must be dismissed accordingly for lack of subject matter jurisdiction.

### ii. Individual FAPE-based claims

Next, the District seeks dismissal of Plaintiffs' individual claims in Counts III, IV, V, VI, XII, and XIII for lack of subject matter jurisdiction, arguing that these are FAPE-based claims as to which Plaintiffs did not exhaust their administrative remedies under the IDEA. (ECF No. 57, at 6). Counts V, VI, and XII contain D.C.'s claims under § 1983. Counts III, IV, and XIII contain Mother's claims under § 504, the ADA, and § 1983, respectively.

11

As discussed above, IDEA administrative exhaustion is a prerequisite to this Court's subject matter jurisdiction over FAPE-based claims. To that end, this Court previously held that in order to have subject matter jurisdiction over D.C.'s and Mother's FAPE-based claims, those claims must have been alleged in the underlying due process complaint filed with Pennsylvania's Office of Dispute Resolution. *D.C.*, 415 F. Supp. 3d at 653. Because the initial Complaint before this Court did not state which claims were included in the due process complaint, and because it is Plaintiffs' burden to establish that this Court has subject matter jurisdiction, the Court dismissed Plaintiffs' FAPE-based claims against the District, as found in Counts I, II, III, IV, V, VI, XII, and XIII. *Id.* at 653–55. The Court then gave Plaintiffs leave to amend the Complaint, in part, to rectify the jurisdictional deficiency. *Id.* at 669.

Plaintiffs have now attached the due process complaint as an exhibit to the Amended Complaint. The due process complaint reveals that the only claims brought before the Office of Dispute Resolution were an IDEA claim and D.C.'s § 504 claim. Additionally, the Court has reviewed the claims against the District in Counts I, II, III, IV, V, VI, XII, and XIII of the Amended Complaint for the possibility that Plaintiffs have realleged them in a way that makes them non-FAPE-based. The Court finds that there are no appreciable differences in these claims between the initial Complaint and the present Amended Complaint. These claims thus remain FAPE-based and are subject to administrative exhaustion. Therefore, the only FAPE-based claim in the present Amended Complaint to have been properly exhausted is D.C.'s individual § 504 claim in Count I. This means that this Court does not have subject matter jurisdiction over D.C.'s individual ADA claim in Count II (which, for some reason, the District does not challenge) or the claims in Counts III, IV, V, VI, XII, or XIII, unless Plaintiffs show that an exception to the administrative exhaustion requirement applies.

12

Plaintiffs argue that the futility and the agency relief exceptions to administrative exhaustion apply here. (ECF No. 47, at ¶¶ 127, 143, 165, 209, 226; ECF No. 67, at 11). Specifically, Plaintiffs contend that exhaustion is futile because they released the claims in the Settlement Agreement. (ECF No. 67, at 11–12). And, they contend that the administrative agency cannot grant the relief requested because the hearing officer cannot award the monetary damages they seek and because the hearing officer does not have the authority to hear the constitutional claims or Mother's associational discrimination claims. *Id.* at 10, 12. All three of these arguments are unavailing.

First, further litigation at the administrative level is not futile simply because a plaintiff voluntarily waived the claim. If this were so, then every litigant who signed a release or missed a statute of limitations deadline could claim this exception from administrative exhaustion. Plaintiffs here voluntarily waived their right to bring related claims. Plaintiffs cannot contract themselves out of the ability to bring a claim and then argue that further litigation at the administrative level is futile.

Second, the Third Circuit has already overruled the argument that a plaintiff may be excused from administrative exhaustion on the ground that the hearing officer cannot award the specific remedy the plaintiff seeks. In *Batchelor v. Rose Tree Media School District*, the Third Circuit found that what activates the IDEA's administrative process is the theory behind the claim at issue, regardless of whether the IDEA supplies the exact remedy sought by the plaintiff. *Batchelor*, 759 F.3d at 276–78. Therefore, it is irrelevant, for purposes of administrative exhaustion, that Plaintiffs here seek remedies that are unavailable under the IDEA. What is relevant is that the claims at issue are predicated on the District's alleged denial of a FAPE to D.C.

Third, Plaintiffs offer no compelling law to support their claim that the administrative hearing officer has no authority to hear their constitutional claims or Mother's associational discrimination claims.  As to the constitutional claims, Plaintiffs offer no statutory or caselaw at all.  Moreover, Plaintiffs ignore caselaw—including at least one case they cite repeatedly—in which constitutional claims were deemed subject to the IDEA's administrative exhaustion requirement.  *See, e.g.*, *Wellman*, 877 F.3d 125, 134–35; *S.D. v. Haddon Heights Bd. of Educ.*, 722 Fed. App'x. 119, 127 (3d Cir. 2018).  As to a hearing officer's authority to hear Mother's associational discrimination claims under § 504 and the ADA, Plaintiffs cite to title 22, chapter 15 of the Pennsylvania Code.  (ECF No. 67, at 10).  However, that chapter "addresses a school district's responsibility to comply with the requirements of Section 504."  22 Pa. Code § 15.1(a).  It does not address compliance with the IDEA.  Rather, as explained repeatedly, the IDEA expressly mandates administrative exhaustion of FAPE-based claims under the Constitution, the ADA, and § 504.  It follows, then, that the IDEA requires participating states to give administrative hearing officers authority to rule on these claims.

In summary, for the reasons stated here and in the previous Opinion, this Court does not have subject matter jurisdiction over the FAPE-based claims that were not alleged in the underlying due process complaint.  Accordingly, the individual claims against the District found in Counts II, III, IV, V, VI, XII, and XIII will be dismissed with prejudice.

### III. Failure to state a claim under Rule 12(b)(6)

A. Legal standard

In deciding a motion to dismiss a complaint under Rule 12(b)(6), a court must first "accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff."  *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (internal quotations omitted).

The court then must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Id.* A complaint is sufficient only when it is facially plausible, meaning that the court is able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). To be plausible on its face, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action" and "mere conclusory statements." *Id.* The court need not "accept unsupported conclusions and unwarranted inferences." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

B. Discussion

The District seeks dismissal of D.C.'s § 1983 claims in Counts V, VI, and XII, and Mother's § 504, ADA, and § 1983 claims in Counts III, IV, and XIII, respectively, under Rule 12(b)(6). (ECF Nos. 54, 55). The District also seeks dismissal of D.C.'s PHRA claim in Count VII, on the ground that once the federal claims are dismissed, the Court should decline to exercise supplemental jurisdiction over this state law claim. (ECF No. 55, at 11–12). Lastly, Mr. Sible seeks dismissal of Count IX, in which D.C. brings a claim for intentional infliction of emotional distress. (ECF Nos. 50, 51).

*i. Federal claims against the District*

Turning first to the federal law claims against the District, this Court's previous Opinion contained a lengthy explanation of why Plaintiffs' claims in Counts III, IV, V, VI, XII, and XIII would fail even if Plaintiffs were able to provide the necessary facts to establish the Court's subject matter jurisdiction over those claims. The Court has reviewed those claims again, and finds that, with only two exceptions, there are no appreciable differences in the Amended Complaint that correct the identified deficiencies. Plaintiffs' two corrections, discussed below,

are not sufficient to fully remedy their failure to state a claim.  Therefore, even if Plaintiffs had overcome the jurisdictional defects and the Court were to decide this matter on the District's Motion under Rule 12(b)(6), Plaintiffs' claims in Counts III, IV, V, VI, XII, and XIII would still be dismissed for failure to state a claim, for the reasons stated in this Court's previous Opinion and for the reasons that follow.

> *a. New averments in Count V.*  First, Count V, in which D.C. brings a § 1983 claim against the District, faced two issues as pleaded in the initial Complaint.  The first was that this claim did not specify the constitutional right at issue.  *D.C.*, 415 F. Supp. 3d at 663.  The second issue was that Count V seemed to address the same conduct and legal theory as Count VI, such that it was duplicative of Count VI.  *Id.*  D.C. corrected the first problem by identifying the rights at issue as "unreasonable seizure and excessive force," presumably under the Fourth and Fourteenth Amendments.  (ECF No. 47, at ¶ 137).  However, the problem remains that this claim is duplicative of D.C.'s § 1983 claim against the District in Count VI.  Both are § 1983 claims by D.C. against the District.  Both allege that the District violated D.C.'s rights to be free from unreasonable seizure and excessive force.  Both identify the policy, practice, or custom at issue as the District's failure to train and supervise its employees regarding the appropriate use of restraints on students with disabilities.  Perhaps the only noteworthy difference, if any, is that Count V addresses only restraints by school police officers, whereas Count VI addresses restraints by both school police officers and Mr. Sible.  Count V therefore remains duplicative of Count VI and would be dismissed on that ground if the Court had subject matter jurisdiction over it.

> *b. New averments in Count XIII.*  Next, in Mother's § 1983 claim in Count XIII, Mother previously alleged that the District violated her Fourteenth Amendment liberty interests in the parenthood and companionship of D.C. and in the maintenance and integrity of her family.  The

Court's previous Opinion explained that Count XIII failed to state a claim because the chain of events on which Mother based her claim was "too attenuated to be the deliberate decision to deprive or interfere that is required to state a claim under the Fourteenth Amendment's Due Process Clause." *D.C.*, 415 F. Supp. 3d at 668. In the Amended Complaint, Mother's allegations regarding her liberty interest in the parenthood and companionship remain unchanged, and therefore must be dismissed. (ECF No. 47, at ¶¶ 219–20). Mother now also alleges the violation of an additional liberty interest: the right "to pursue adequate employment to support her family." *Id.* at ¶ 221. She alleges that "the District's failure to adequately support D.C. and requiring [Mother] to pick him up from school during work hours as a result interfered with her right to pursue adequate employment." *Id.* at ¶ 222.

The Fourteenth Amendment's Due Process Clause protects a person's "right to hold specific private employment and to follow a chosen profession free from *unreasonable* governmental interference." *Piecknick v. Pennsylvania*, 36 F.3d 1250, 1259 (3d Cir. 1994) (emphasis added). It "does not condemn every conceivable state action that affects a fundamental right in any way." *McCurdy v. Dodd*, 352 F.3d 820, 827 (3d Cir. 2003). As discussed in this Court's previous Opinion, "the due process guarantee has historically been applied only to '*deliberate* decisions of government officials to deprive a person of life, liberty, or property.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Negligent acts of government officials that "caus[e] unintended loss of or injury to life, liberty, or property" do not implicate the Due Process Clause. *Daniels*, 474 U.S. at 328. At bottom, Mother's claim is that the District's failure to provide adequate supports to D.C.—that is, the District's denial of FAPE to D.C.—led to childcare issues for Mother, which in turn led to loss of employment for Mother. Like her claim regarding her liberty interest in the parenthood of D.C., this chain of events is too

17

attenuated to allege a deliberate decision by the District to deprive her of her right to employment.  Count XIII therefore fails to state a claim for which relief may be granted.

In summary, even if Plaintiffs had been able to cure the jurisdictional defects of Counts III, IV, V, VI, XII, and XIII, these claims would still fail, and the Court would dismiss them pursuant to Rule 12(b)(6).

### ii. D.C.'s PHRA claim against the District

As to D.C.'s PHRA claim in Count VII, the District asks the Court to decline to exercise supplemental jurisdiction on the ground that the correlating federal claims have been or must be dismissed.  Generally, a district court has supplemental jurisdiction over state law claims "that are so related to claims" over which the court has original jurisdiction, such that "they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  A state law claim is "so related" to a federal claim if the two claims "derive from a common nucleus of operative fact."  *City of Chi. v. Int'l College of Surgeons*, 522 U.S. 156, 165–66 (1997) (internal quotations omitted).  A district court "may decline to exercise jurisdiction over supplemental state law claims" upon consideration of "a host of factors," such as "the circumstances of the particular case, the nature of the state law claims, the character of the governing state law, and the relationship between the state and federal claims."  *Id.* at 173.

In the Amended Complaint, as in the initial Complaint, D.C. bases his PHRA claim on both disability and race discrimination.  As to disability discrimination, D.C.'s PHRA claim is based on the same nucleus of facts as D.C.'s § 504 and ADA claims.  D.C.'s ADA claim in Count II is presently dismissed for lack of subject matter jurisdiction, but D.C.'s § 504 claim in Count I remains.  The Court thus can properly exercise supplemental jurisdiction over the disability-based portion of Count VII.

As to race discrimination, the District points out that D.C.'s Title VI race discrimination claim was previously dismissed for failure to state a claim and was not realleged in the Amended Complaint.  (ECF No. 55, at 11).  D.C. does not respond to this issue.  Rather, D.C. makes a blanket statement that "the relevant derivative Federal claims have been sufficiently plead[ed] and should proceed," and as such, "supplemental jurisdiction over the PHRA claim remains appropriate."  (ECF No. 65, at 11).  Although his argument is lacking, the Court notes that D.C. alleges in Count VII that "the District elected to utilize the school police officer to discipline D.C. due to his race . . . ."  (ECF No. 47, at ¶ 178).  The use of school police forms a significant part of the basis of D.C.'s § 504 claim in Count I.  Consequently, there is a common nucleus of facts that allows the Court to continue to exercise supplemental jurisdiction over the race discrimination portion of the PHRA claim.

Therefore, the Court will continue to exercise supplemental jurisdiction over D.C.'s PHRA claim in Count VII.  As a result, the District's Motion to Dismiss will be denied as to Count VII.

### iii. Claim against Mr. Sible

Finally, Mr. Sible moves to dismiss the one remaining claim against him, D.C.'s intentional infliction of emotional distress claim, found in Count IX.  (ECF No. 51).  A claim for intentional infliction of emotional distress requires the plaintiff to plead facts that show that (1) the conduct at issue was extreme and outrageous; (2) the conduct was done intentionally or recklessly; (3) the conduct caused emotional distress; and (4) the resultant distress was severe. *Gray v. Huntzinger*, 147 A.3d 924, 927 (Pa. Super. Ct. 2016).  As to the fourth element, the plaintiff must allege that the emotional distress was severe enough that he suffered "some type of resulting physical harm due to the defendant's outrageous conduct."  *Reeves v. Middletown*

*Athletic Ass'n*, 866 A.2d 1115, 1122 (Pa. Super. Ct. 2004); *Eck v. Oley Valley Sch. Dist.*, 2019

U.S. Dist. LEXIS 137743, at *20 n.98 (E.D. Pa. Aug. 15, 2019).

In the initial Complaint, D.C. alleged intentional infliction of emotional distress against

Mr. Sible, school principal Mark McClinchie, and school police officer Marion Parker.  Mr.

McClinchie and Officer Parker sought dismissal of the claim, which the Court granted, while Mr.

Sible answered the Complaint.  *D.C.*, 415 F. Supp. 3d at 665–66.  In the previous Opinion, this

Court explained that D.C. failed to state a claim against Mr. McClinchie and Officer Parker, in

part, because he did not allege any physical manifestation of his emotional distress as required by

Pennsylvania common law.  *Id.*  The Court did not rule on the claim against Mr. Sible because

Mr. Sible had not moved for dismissal and the Court otherwise did not have a reason to consider

the merits of the claim.  Now, following the filing of the Amended Complaint, Mr. Sible

challenges this claim.

Count IX, as presently alleged, states that "D.C. suffered severe emotional distress of a

lasting nature," in that he "developed Post-Traumatic Stress Disorder as a result of the

incidents."  (ECF No. 47, at ¶ 189).  D.C. further alleges that "Post-Traumatic Stress Disorder

*can ultimately lead to* chronic pain, worsening physical health problems, social isolation and

withdrawal, self-harm, or suicidal thoughts and behaviors."  *Id.* at ¶ 190 (emphasis added).  D.C.

does not allege, however, that he has actually suffered any physical harm.  To be sure, post-

traumatic stress disorder is a serious diagnosis, but it is not one that Pennsylvania courts

currently recognize as actionable under an intentional infliction of emotional distress claim.

Moreover, alleging that D.C. may suffer physical harm at some point in the future is not

sufficient to establish the damages element of a tort cause of action.  Consequently, D.C. fails to

state a claim for intentional infliction of emotional distress against Mr. Sible, and Count IX must

be dismissed.

20

**IV. Conclusion**

THEREFORE, the District's Motion to Dismiss for lack of subject matter jurisdiction is GRANTED, and the putative class claims in Counts I and II and the individual claims in Counts III, IV, V, VI, XII, and XIII are dismissed with prejudice.  The Court also dismisses, sua sponte, the individual claim in Count II.  The District's Motion to Dismiss for failure to state a claim is DENIED as to Count VII and DENIED AS MOOT as to Counts III, IV, V, VI, XII, and XIII. Nicolas Sible's Motion to Dismiss for failure to state a claim is GRANTED, and the claim against him in Count IX is dismissed accordingly.

The claims that remain are D.C.'s individual § 504 claim in Count I and D.C.'s PHRA claim in Count VII.  The only parties that remain are D.C. and the District.

The District shall file an answer to the remaining claims within 21 days of this Opinion and Order.

IT IS SO ORDERED.

DATE _June 15, 2020_               _Marilyn J. Horan_
                                   Marilyn J. Horan
                                   United States District Judge